**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Janice D Songer,<br><br>   Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>   Defendant. | No. CV-23-00891-PHX-SMB<br><br>**ORDER** |

At issue is the denial of Plaintiff Janice Songer's Application for Social Security Disability Insurance ("SSDI") benefits by the Social Security Administration ("SSA") under the Social Security Act ("the Act"). Plaintiff filed a Complaint (Doc. 1) seeking judicial review of that denial and an Opening Brief (Doc. 11). Defendant Commissioner of Social Security Administration (the "Commissioner") filed an Answering Brief (Doc. 15), and Plaintiff filed a Reply (Doc. 16). The Court has reviewed the briefs, the Administrative Record ("AR") (Docs. 6–8), and the Administrative Law Judge's ("ALJ") decision (Doc. 6-3 at 29–38) and will affirm the ALJ decision for the reasons addressed herein.

**I.    BACKGROUND**

Plaintiff filed an Application for SSDI benefits on March 4, 2014, alleging a disability beginning on September 1, 2012. (*Id.* at 32.) Plaintiff's claim was initially denied on June 25, 2014. (*Id.* at 32.) A hearing was held before ALJ Sheldon P. Zisook on September 9, 2016. (*Id.*) After considering medical evidence and testimony, the ALJ

1  determined that Plaintiff suffered from multiple sclerosis, degenerative disc disease, and hypertension. (*Id.* at 34.) However, the ALJ concluded that, despite these impairments, Plaintiff was not under a disability, as defined in 20 C.F.R. 404.1520(c), at any time from September 1, 2012, the alleged onset date, to December 31, 2014, the date last insured. (*Id.* at 38.) Thus, the ALJ denied Plaintiff's application on October 26, 2016. (*Id.* at 38.) Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision (*Id.* at 2). Plaintiff appealed to the U.S. District Court for the District of Arizona and Judge Lanza, upon stipulation of the parties, ordered the case remanded for further administrative proceeding. (Doc. 7 at 24.)

On remand, ALJ Dante Alegre found that Plaintiff suffered from hypertension, hypercholesterolemia, plantar fasciitis, multiple sclerosis, lumbar degenerative disc disease, and knee osteoarthritis. (*Id.* at 76.) Despite these impairments, the ALJ concluded that Plaintiff did not have an impairment or combination of impairments that significantly limited the ability to perform basic work-related activities until May 22, 2014. (*Id.* at 79.) Plaintiff again appealed, and the Appeals Council remanded to the ALJ. (Doc. 6-10 at 14.)

On the second remand, the ALJ concluded that, since the alleged September 1, 2012 onset date of disability, Plaintiff suffered from multiple sclerosis and plantar fasciitis. (*Id.* at 17.) However, the ALJ found that Plaintiff's impairments did not reach the disability threshold until May 22, 2014. (*Id.* at 26.) The ALJ also concluded that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 CFR 404.1567(b) before May 22, 2014. (*Id.* at 19.) Thereafter, the Appeals Council denied Plaintiff's Request for Review of the ALJ's decision—making it the final decision of the Commissioner—and this appeal followed. (Doc. 1.) Plaintiff only challenges the ALJ's finding that Plaintiff was not disabled from September 1, 2012 through May 21, 2014. (*Id.* at 3 ¶ 12.)

**II.    LEGAL STANDARD**

In determining whether to reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision. *See Lewis v. Apfel*, 236 F.3d 503, 517

n.13 (9th Cir. 2001). An ALJ's factual findings "shall be conclusive if supported by substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1153 (2019). The Court may set aside the Commissioner's disability determination only if it is not supported by substantial evidence or is based on legal error. *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007). Substantial evidence is relevant evidence that a reasonable person might accept as adequate to support a conclusion considering the record as a whole. *Id.* Generally, "[w]here the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002).

To determine whether a claimant is disabled for purposes of the Act, the ALJ follows a five-step process. 20 C.F.R. § 404.1520(a). The claimant bears the burden of proof on the first four steps, but the burden shifts to the Commissioner at step five. *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). At the first step, the ALJ determines whether the claimant is presently engaging in substantial gainful activity. 20 C.F.R. § 404.1520(a)(4)(i). If so, the claimant is not disabled, and the inquiry ends. *Id.* At step two, the ALJ determines whether the claimant has a "severe" medically determinable physical or mental impairment. 20 C.F.R. § 404.1520(a)(4)(ii). If not, the claimant is not disabled, and the inquiry ends. *Id.* At step three, the ALJ considers whether the claimant's impairment or combination of impairments meets or medically equals an impairment listed in Appendix 1 to Subpart P of 20 C.F.R. Part 404. *See* 20 C.F.R. § 404.1520(a)(4)(iii). If so, the claimant is automatically found to be disabled. *Id.* If not, the ALJ proceeds to step four. *Id.* At step four, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled, and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). If so, the claimant is not disabled. *Id.* If not, the claimant is disabled. *Id.*

## III. DISCUSSION

Plaintiff raises three arguments for the Court's consideration: (1) whether the ALJ failed to afford controlling weight to Dr. Keole's medical opinion; (2) whether the ALJ failed to properly evaluate Plaintiff's disabling symptoms; and (3) whether the vocational expert's (the "VE") testimony supported the ALJ's finding that Plaintiff could perform her past relevant work.

### A. Dr. Keole's Medical Opinion

Plaintiff argues that the ALJ committed reversible error by declining to afford controlling weight to the opinions offered by Plaintiff's treating physician, Dr. Keole. (Doc. 11 at 15.) In response, the Commissioner argues that, because Dr. Keole's testimony did not accord with Plaintiff's decision to receive minimal treatment and the normal objective findings of Plaintiff's conditions, the ALJ articulated sufficient reasoning to afford only partial weight Dr. Keole's testimony. (Doc. 15 at 12.) In reply, Plaintiff argues that the ALJ is not qualified to make medical determinations, and thus the ALJ should have deferred to Dr. Keole's medical judgment. (Doc. 16 at 7–8.)

Although "[t]he ALJ must consider all medical opinion evidence," there is a hierarchy among the sources of medical opinions. *Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). Those who have treated a claimant are treating physicians; those who examined but did not treat the claimant are examining physicians; and those who neither examined, nor treated the claimant are non-examining physicians. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." *Id.* This is because treating physicians have the advantage of in-person interaction and typically a longer history of treatment than a claimant's other doctors, and their "subjective judgments . . . are important, and properly play a part in their medical evaluations." *Embrey v. Bowen*, 849 F.2d 418, 422 (9th Cir. 1988).

An ALJ "may only reject a treating or examining physician's uncontradicted medical opinion based on 'clear and convincing reasons.'" *Carmickle v. Comm'r Soc. Sec.*

*Admin.*, 533 F.3d 1155, 1164 (9th Cir. 2008) (quoting *Lester*, 81 F.3d at 830–31). "Where such an opinion is contradicted, however, it may be rejected for 'specific and legitimate reasons that are supported by substantial evidence in the record.'" *Id.* (quoting *Lester*, 81 F.3d at 830). An ALJ meets this standard by "setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).[1]

Dr. Keole diagnosed Plaintiff with multiple sclerosis on February 20, 2015, and opined that Plaintiff's symptoms and related limitations applied as far back as September 1, 2012. (*Id.*) The ALJ afforded little weight to Dr. Keole's retroactive opinion for several reasons. First, Dr. Keole did not start treating Plaintiff until well after the alleged disability onset date, and therefore, Dr. Keole's opinion is based on Plaintiff's subjective statements and not the evidence of record. (*Id.*) The Ninth Circuit has previously castigated an ALJ who rejected a treating neurologist's retrospective multiple sclerosis diagnosis when the record otherwise signified clinical and diagnostic signs of disease complications during the relevant periods. *See Petersen v. Barnhart*, 213 Fed. App'x 600, 603 (9th Cir. 2006) (unpublished). Here, however, the ALJ cited to specific medical records that belie Dr. Keole's retrospective diagnosis, including reports that show Plaintiff's multiple sclerosis was not severe enough to prevent her from engaging in basic physical or mental work prior to May 21, 2014. (Doc. 6-10 at 18; Doc. 6-8 at 15–27, 29–31, 37, 96, 101.)

The ALJ also relied on Plaintiff's former neurologist, Dr. Hodgson, who reviewed cervical spine, thoracic spine, and brain MRIs, taken between July 2013 and March 2014, and concluded there was no clear evidence of an active disease. (Doc. 6-8 at 15–27.) Dr. Hodgson also reported that, despite not previously being on multiple sclerosis medication, Plaintiff was not suffering from attacks or exacerbations. (*Id.* at 15–26.) Additionally, her primary care physician noted that she had "done very well without any [multiple sclerosis] medications." (Doc. 6-8 at 37.) Plaintiff claims that she had issues with balance, falling,

---

[1] For claims filed after March 27, 2017, the rule that previously gave deference to opinions from treating physicians has been rescinded. Because this claim arose in 2014, the pre-2017 regulations apply. 20 C.F.R. § 404.1527.

and alleges disabling pain. However, Plaintiff denied having suffered from falls to Dr. Hodgson and signaled that her pain was minimal to another provider. (6-8 at 96, 101.)

The ALJ weighed Dr. Keole's opinion as a treating physician against all other relevant medical evidence for the period on appeal. At each juncture, the ALJ cited to the record and explained why Plaintiff's medical history cut against finding that her multiple sclerosis and other ailments rendered her disabled from September 1, 2012 to May 21, 2014. (*See* Doc. 6-10 at 20–22, 24–25.) Thus, the ALJ articulated a sufficient basis for affording little weight to Dr. Keole's opinion.

### B. Plaintiff's Symptom Testimony

Plaintiff argues that the ALJ committed reversible error by not finding Plaintiff disabled between September 1, 2012 and May 21, 2014 in light of her hearing testimony. (Doc. 11 at 3, 21.) The Commissioner argues that the ALJ's opinion is supported by substantial evidence and contains no legal error. (Doc. 15.) In reply, Plaintiff argues that the ALJ's opinion did not provide specific reasoning, and thus this Court cannot determine how the ALJ weighed Plaintiff's statements. (Doc. 16 at 2.)

An ALJ performs a two-step analysis to evaluate a claimant's testimony regarding pain and symptoms. *Garrison v. Colvin*, 759 F.3d 995, 1014 (9th Cir. 2014). First, the ALJ evaluates whether the claimant has presented objective medical evidence of an impairment that "could reasonably be expected to produce the pain or symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991)). Second, absent evidence of malingering, an ALJ may only discount a claimant's allegations for reasons that are "specific, clear and convincing" and supported by substantial evidence. *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012).

"[T]he ALJ must specifically identify the testimony she or he finds not to be credible and must explain what evidence undermines the testimony." *Holohan v. Massanari*, 246 F.3d 1195, 1208 (9th Cir. 2001). General findings are insufficient. *Id.* "Although the ALJ's analysis need not be extensive, the ALJ must provide some reasoning in order for

[the Court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014). "[T]he ALJ may consider inconsistencies either in the claimant's testimony or between the testimony and the claimant's conduct." *Molina*, 674 F.3d at 1112. For example, the ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms." *Id.* (quoting *Lingenfelter*, 504 F.3d at 1040).

The Court disagrees with Plaintiff that the ALJ was not specific in discounting Plaintiff's testimony. Here, Plaintiff testified that she could not continue her work as a realtor because her vertigo and multiple sclerosis impaired her ability to use the stairs, drive, and caused memory issues. (Doc. 11 at 8.) The ALJ, although noting that Plaintiff's medically determinable impairments could reasonably be expected to produce some of the alleged symptoms, found that Plaintiff's reported absence of multiple sclerosis complications and medical reports showing otherwise normal physical health in the relevant period warranted discounting her testimony. (Doc. 6-10 at 17–18.) Moreover, the ALJ cited to and discussed how routine medical management afforded Plaintiff near full pain relief, and how she generally denied complications at appointments with her neurologist. (*Id.* at 18, 21.) The ALJ also cited to Plaintiff's ability to squat and kneel, ascend and descend stairs, complete errands, cook, drive, and ride her bicycle. (*Id.* at 18; Doc. 6-8 at 36; Doc. 6-9 at 85.)

Plaintiff specifically challenges the ALJ's reliance on her testimony that she did daily forty-five-minute bicycle rides during the relevant period. (Doc. 11 at 23.) Plaintiff relies on *Morris v. Berryhill*, 358 F. Supp. 3d 875 (D. Ariz. Jan 4, 2019), in which the Court found the ALJ's decision to discount the claimant's treating physician's opinion was illegitimate because "the ALJ did not explain how preparing meals, paying bills, shopping, and reading would translate into the ability to perform full time work." 358 F. Supp. 3d at 883. Plaintiff's reliance on *Morris* is misplaced. First, there are patent differences in the physical demands of cooking, shopping, or reading compared to forty-five-minute bicycle rides. Second, the claimant in *Morris* suffered from schizoaffective and depressive

1  disorders that affected her ability to perform full-time work. *Id.* at 883.  There, the ALJ
2  failed to articulate a nexus between the claimant's ailments and feasible activities as they
3  related to claimant's ability to perform full-time work.  *Id.*  Here, Plaintiff testified to
4  disabling symptoms, but could still engage in forty-five-minute bicycle rides, use the stairs,
5  and squat and kneel, which all tend to show that Plaintiff retained sufficient physical
6  faculties to preclude finding she could not work.

The ALJ's specificity throughout the decision supports his ultimate finding that "[Plaintiff's] statements concerning the intensity, persistence, and limiting effects of the symptoms are not fully supported prior to May 22, 2014." (Doc. 16 at 2.)  Thus, for the reasons above, the Court agrees with the Commissioner that the ALJ gave specific reasons for finding Plaintiff's testimony not credible.  (*Id.*); *see Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008) ("The ALJ may consider many factors in weighing a claimant's credibility," including "unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment").  As discussed, the record shows that Plaintiff's multiple sclerosis did not severely limit her in the period on appeal, nor were her other conditions severe enough to render her disabled or without the ability to work. *Cf. Lester*, 81 F.3d at 830 ("[T]he Commissioner must evaluate the claimant's ability to work on a sustained basis . . . . Occasional symptom-free periods . . . are not inconsistent with disability." (cleaned up)).  Although Plaintiff may disagree with how the ALJ interpreted the record and her subjective symptom characterization, the ALJ did offer sufficient reasoning to discount her testimony.

### C.  RFC and Job Determination

Plaintiff argues that the VE's testimony does support the ALJ's finding that Plaintiff could perform her past work because the ALJ failed to give a complete hypothetical to the VE. (Doc. 11 at 24.)  The Commissioner argues that the ALJ reasonably determined that, given her RFC and the VE's testimony, Plaintiff could perform her past work as a real estate agent before May 22, 2014. (Doc. 15 at 17.)  The Commissioner also argues that, even if Plaintiff could not perform her past relevant work, her vocation factors and RFC

show that she was not disabled based on Medical-Vocational Guidelines. (*Id.*)

"If an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1228 (9th Cir. 2009) (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991)). In that situation, "the vocational expert's testimony cannot constitute substantial evidence to support the ALJ's findings." *Hill v. Astrue*, 698 F.3d 1153, 1162 (9th Cir. 2012) (quoting *Gallant v. Heckler*, 753 F.2d 1450, 1456 (9th Cir. 1984)). The Court may affirm if the ALJ's failure to include all of the claimant's limitations was harmless. *See, e.g.*, *Matthews v. Shalala*, 10 F.3d 678, 681 (9th Cir. 1993) (reviewing for harmless error). "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" *Lambert v. Saul*, 980 F.3d 1266, 1278 (9th Cir. 2020) (quoting *Brown-Hunter v. Colvin*, 806 F.3d 487, 494 (9th Cir. 2015)).

The ALJ asked the VE three hypotheticals where the hypothetical person had the same age, education level, and work experience as Plaintiff:

> (1) Could a hypothetical individual that could lift and between ten and twenty pounds, stand and walk for six hours in an eight-hour day and sit for six hours in an eight-hour day, frequently climb, balance, stoop, kneel, crouch and crawl work as a police lieutenant or real estate agent?
>
> (2) Could a hypothetical individual that could lift and ten pounds, stand and walk for two hours in an eight-hour day and sit for six hours in an eight-hour day, occasionally climb, balance, stoop, kneel, crouch and crawl work as a police lieutenant or real estate agent?
>
> (3) Could a hypothetical individual that stand and walk for two hours in an eight-hour day and sit for two hours in an eight-hour day, occasionally lift five to ten pounds, and take breaks every 30 to 45 minutes due to pain work as a police lieutenant or real estate agent?

(*See* Doc. 6-10 at 62.) The VE posited that the first hypothetical individual could work those positions, although neither the second nor the third hypothetical individual could work those positions. (*Id.*)

As Plaintiff correctly recognizes, in hypotheticals posed to a VE, the ALJ must only include those limitations supported by substantial evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 886 (9th. Cir. 2006). Contending that very point, Plaintiff argues that, because the record supports Dr. Keole's opinion about her limitations, the ALJ's omission of those limitations was error. (Doc. 11 at 25.) Here, the Court finds that the record did not support Dr. Keole's opinions about Plaintiff's multiple sclerosis symptoms during the disputed period. Thus, ALJ did not need to include those limitations into his hypothetical. Therefore, the ALJ's hypotheticals posed to the VE properly reflected all of the claimant's limitations. *Bray*, 554 F.3d at 1228; *Hill*, 698 F.3d at 1162.

Here, the ALJ's hypothetical questions accurately depicted Plaintiff's limitations, and the VE's testimony corresponded with the Dictionary of Occupational Titles. The ALJ propounded hypotheticals to the VE based on the Plaintiff's past work classifications. (Doc. 6-10 at 59–63.) Under the first hypothetical, the VE found Plaintiff could perform her past relevant work as a real estate agent as generally performed. (*Id.* at 62.) As discussed above, the ALJ reasonably assessed Plaintiff's subjective symptom testimony and the medical evidence of record when assessing her RFC. Therefore, the hypothetical propounded to the VE incorporated all of Plaintiff's limitations, and the ALJ did not err in relying on the VE's testimony.

### IV. CONCLUSION

Accordingly,

**IT IS HEREBY ORDERED** affirming the May 11, 2022 decision of the ALJ (Doc. 6-10).

**IT IS FURTHER ORDERED** directing the Clerk to enter final judgment consistent with this Order and close this case.

Dated this 20th day of September, 2024.

Honorable Susan M. Brnovich
United States District Judge